IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DONALD RAY MOFFATT, #725270 | § | |
| VS. | § | CIVIL ACTION NO. 6:04cv515 |
| DIRECTOR, TDCJ-CID | § | |

<u>MEMORANDUM OPINION AND</u>
<u>ORDER OF DISMISSAL</u>

Petitioner Donald Ray Moffatt, an inmate confined in the Texas prison system, proceeding *pro se*, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

<u>History of the Case</u>

The Petitioner filed the petition for a writ of habeas corpus concerning prison disciplinary proceedings on November 19, 2004. The Director filed an answer on March 17, 2005. On June 15, 2005, a Report and Recommendation was issued to dismiss the case without prejudice for failure to exhaust. The Report and Recommendation was adopted, and the case was dismissed on August 8, 2005. The Director responded by filing a motion to alter or amend the judgment arguing that the unexhausted claims should be dismissed as procedurally barred. The motion was granted on August 30, 2005. *Moffatt v. Director*, *TDCJ-CID*, 390 F.Supp.2d 560 (E.D. Tex. 2005). The Petitioner was given the opportunity to file a response satisfying the cause and prejudice standard in order to have his unexhausted claims considered on the merits. The Petitioner filed a response on September 19, 2005. The Director filed a response to the Petitioner's arguments on November 8, 2005.

<u>Facts of the Case</u>

The Petitioner is in the custody of the Texas prison system pursuant to a Forgery conviction out of Cameron County. The Director conceded that the Petitioner is eligible for release on mandatory supervision.

1

The petition included challenges to disciplinary case number 20040189045, case number 20040335385 and an unknown case number involving allegations of threatening an officer that purportedly occurred on August 28, 2004. In case number 20040189045, the Petitioner was found guilty of creating a disturbance (Code 23.0). The incident occurred on March 4, 2004. The Petitioner received formal notification of the charges on March 5, 2004. A disciplinary hearing was conducted on May 9, 2004. The Petitioner was found guilty based on the charging officer's report and testimony. The punishment imposed consisted of the loss of commissary privileges for 45 days, cell restrictions for 45 days and the loss of 60 days good time. In case number 20040335385, the Petitioner was found guilty of threatening to inflict harm on an officer (Code 4.0). The incident occurred on July 28, 2004. The Petitioner received formal notification of the charges on August 2, 2004. A disciplinary hearing was conducted on August 4, 2004. The Petitioner was found guilty based on the charging officer's report and Officer Alexander's testimony. The punishment imposed consisted of the loss of commissary privileges for 45 days, cell restrictions for 45 days, solitary confinement for 15 days and the loss of 177 days good time. The Director has submitted an affidavit stating that a diligent search was conducted regarding a case that occurred on August 28, 2004, and there are no records for any such case.

As previously noted, the Petitioner filed the original petition for a writ of habeas corpus on November 19, 2004. The original petition focused on case number 20040189045. The Petitioner alleged that the charges were false, that he was on the floor and purportedly creating a disturbance only because the officers around him jerked his crutches from him, that he was subjected to cruel and unusual punishment and that he was denied access to health care. In the original petition, the Petitioner did not list a case number for any other cases. He placed questions marks by the case numbers and dates. He did not discuss the details of the August cases, thus he was ordered to submit an amended petition. He filed a memorandum on February 1, 2005. The Petitioner again alleged that case number 20040189045 was false, that he was subjected to cruel and unusual punishment, and that he was denied medical care. With respect to case number 20040335385, the Petitioner

2

alleged that the charges were false, that the charges were filed in retaliation for threatening to file a grievance, that he was denied access to the entire hearing and his last two witnesses were questioned without him being there, and that he was placed in solitary without being told what his punishment was or the reason for finding him guilty.

The Director filed an answer on March 17, 2005.  The Director asserted that the Petitioner did not raise all of his claims in both his Step 1 and Step 2 grievances regarding case number 20040189045.  He further asserted that the Petitioner did not file any grievances regarding the August cases.  He argued that the petition should be dismissed for failure to exhaust state remedies and as procedurally barred.  The grievance records supplied by the Director support his assertions.  The Step 1 grievance regarding case number 20040189045 reveals that the Petitioner primarily complained about crutches being taken from him.  Near the bottom of the first page, he finally discussed how after he fell he received a case for refusing housing and disruption of operations.  The Petitioner went on to argue that the guilty verdict was contrary to prison rules.  He claimed that Officer Holman was at fault for taking his crutches.  He characterized the case as false and frivolous.  In his Step 2 grievance, the Petitioner again argued that the charges were not true.  He again described them as false and frivolous.  He asserted for the first time he was denied due process.  He complained for the first time that health care was delayed.  He alleged that the disciplinary hearing officer conspired with Officer Holman.

In response to the order giving the Petitioner the opportunity to show cause and prejudice in order to have his claims considered on the merits, the Petitioner filed a response on September 19, 2005.  He asserted that he received the first case on March 4, 2004, and the second case on July 28, 2004.  With respect to cause, he argued that the first set of charges were false and that he was denied due process.  He claimed that exhaustion would be futile, but he failed to discuss why he failed to raise the claims that he is bringing in the present petition in both his Step 1 and Step 2 grievances.  He failed to show cause.  Regarding the second disciplinary case, the Petitioner argued that the only thing he did was to threaten to file a grievance.  He alleged that the case was false.  With respect to

3

cause, he stated that all of legal and writing materials were taken when he was placed in solitary confinement. He asserted that he was denied writing materials and grievance forms. He was unable to pursue any grievances due to the lack of forms. He asserted that he was prejudiced due to the punishment imposed against him, particularly the loss of good time which affected his release date.

The Director filed a response to the Petitioner's effort to satisfy the cause and prejudice standard on November 8, 2005. The Director disputed the claim that the Petitioner was denied access to grievance forms while he was confined in solitary confinement and for five days afterwards, which made it impossible for him to timely pursue his administrative remedies. He disputed the claim that the Petitioner was not informed about his right to appeal, the method for filing an appeal and access to review the audiotape of the hearing in order to prepare an appeal. The Director noted that prison regulations mandate that grievance staff must insure that inmates have access to forms. Inmates in solitary confinement may obtain the grievance forms from any employee. They may also request the forms in writing from the law librarian or grievance staff. He argued that the Petitioner's claim that he did not have access to the forms is not credible. The Director provided a statement from counsel substitute that assistance would have been provided with an appeal if the Petitioner had asked for assistance, but he failed to do so. Counsel substitute logs show that he did not ask for help regarding the August disciplinary case. The Director noted that the Petitioner alleged that he fashioned "home made" I-60s (Inter-Office Communications) on March 6 and August 9. The Court would note that the implication of the Petitioner's statement is that he still could have filed a grievance on a "home made" form. The Director also noted that the Petitioner knew how to file grievances and appeals from previous disciplinary cases. He had 26 prior major disciplinary cases. He was assessed solitary confinement in 12 of these cases, and he timely filed grievances in 3 of the 12 cases. The Director noted that the Petitioner has vast experience in filing grievances and appeals. He characterized the Petitioner's explanation for cause as disingenuous.

The Director also noted that the hearing tape reveals that the Petitioner's claims that he was not informed of the hearing officer's findings, that he was not given a copy of the hearing report and

that he was not informed about the appeal process are equally disingenuous. The copy of the hearing tape provided by the Director supports his arguments. With respect to prejudice, the Director noted that the Petitioner focused on the loss of good time and good time earning capacity. The Director countered the claim by noting that the Petitioner may have suffered a setback with his good time earning capacity, but the Petitioner's continued violations of TDCJ rules had been ongoing for six years and which he cannot show has changed. The Director argued that the Petitioner has shown neither cause nor prejudice and that the claims were procedurally barred.

Discussion and Analysis

The Supreme Court fully discussed the rights of prisoners in prison disciplinary hearings in *Wolff v. McDonnell*, 418 U.S. 539 (1974). The Supreme Court noted that lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen. *Id.* at 555. Prisoners retain some due process rights, but they are not entitled to the full panoply of rights due to a defendant in criminal proceedings. *Id.* at 556. The rights of inmates in prison disciplinary proceedings are limited, but they are entitled to written notice of the claimed violation at least twenty-hours before a disciplinary hearing, a written statement of the fact finders as to the evidence relied on and reasons, and the right to call witnesses and present documentary evidence where such would not be unduly hazardous to institutional safety or correctional goals. The Supreme Court noted that these rights must be extended to inmates when the loss of good time or confinement in solitary confinement is involved. The Supreme Court discussed the sufficiency of the evidence in prison disciplinary proceedings in *Superintendent v. Hill*, 472 U.S. 445 (1985). Federal Courts will not review a disciplinary hearing officer's factual findings *de novo*, instead the courts will only consider whether the decision is supported by "some facts" or by "a modicum of evidence." *Id.* at 454-55. *See also Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001).

More recently, the Supreme Court placed severe limitations on challenges to disciplinary cases in *Sandin v. Conner*, 515 U.S. 472 (1995). The Court concluded that the federal judiciary had gone too far in extending due process rights as first articulated in *Wolff v. McDonnell*. The Court

retreated from its earlier conclusion that due process rights must be accorded to inmates before placing them in solitary confinement. *Id.* at 485. The Court referred to its discussion in *Wolff* regarding solitary confinement as "dicta." *Id.* The Supreme Court went on to hold that "Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 486. The Court concluded that Conner did not have a "protected liberty interest that would entitle him to the procedural protections set forth in *Wolff*. The regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at 487. Absent atypical punishment, a prisoner does not have a basis for a federal lawsuit concerning a disciplinary action.

The Fifth Circuit has applied *Sandin* to a number of situations. Punishment consisting of placement in administrative segregation or the loss of the opportunity to earn good time is not enough to trigger the protection of the Constitution. *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995). The loss of the opportunity to earn good time will not trigger the protection of the Constitution even when an inmate is eligible for mandatory supervision. *Malchi v. Thaler*, 211 F.3d 953 (5th Cir. 2000). The imposition of commissary and cell restrictions likewise will not trigger the protection of the Constitution. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). The loss of good time will not support relief to the extent that it adversely affects parole eligibility. *Sandin*, 515 U.S. at 487. However, the loss of good time will trigger the protection of the Constitution if, and only if, a prisoner is eligible for release on mandatory supervision. *Madison v. Parker*, 104 F.3d at 769.

In the present case, to the extent the Petitioner's punishment consisted of the loss of commissary privileges, cell restrictions or placement in solitary confinement, his punishment did not involve a protected liberty interest and was not serious enough to trigger the protection of the Constitution. On the other hand, he also lost good time and is eligible for release on mandatory supervision, thus he had a protected liberty interest and was entitled to due process as established by the Supreme Court. The Court would note, however, that a review of the prison records and hearing tape reveal that he was accorded all of his rights.

6

Nonetheless, the focus of the present Memorandum Opinion is whether the Petitioner procedurally defaulted his claims. A state prisoner must exhaust all available state remedies before proceeding in federal court unless circumstances exist which render the state corrective process ineffective to protect the prisoner's rights. 28 U.S.C. § 2254(b) & (c). Texas state courts will not entertain habeas corpus challenges to a prison disciplinary proceeding. *Ex parte Palomo*, 759 S.W.2d 671, 674 (Tex. Crim. App. 1988); *Ex parte Brager*, 704 S.W.2d 46 (Tex. Crim. App. 1986). Thus the Petitioner was not required to pursue habeas corpus relief in state court before filing a petition for a writ of habeas corpus in federal court concerning a disciplinary case. However, he was required to exhaust the prison grievance procedures before proceeding to federal court. *See Gartrell v. Gaylor*, 981 F.2d 254, 258 n.3 (5th Cir. 1993); *Lerma v. Estelle*, 585 F.2d 1297, 1299 (5th Cir. 1978), *cert. denied*, 448 U.S. 848 (1979).

The records submitted by the Director confirm that the Petitioner did not exhaust his administrative remedies with respect to any of his claims. With respect to disciplinary case number 2004189045, the Petitioner did not raise any of his claims in both the Step 1 and Step 2 grievances. He did not file any grievances regarding disciplinary case number 20040189045. The Director correctly argued that he did not exhaust his administrative remedies.

Procedural default occurs when a prisoner fails to exhaust available state remedies and the court or forum to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. *Bagwell v. Dretke*, 372 F.2d 748, 755 (5th Cir. 2004) (citations omitted). A court may resurrect a defaulted claim and consider it on the merits if the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that the failure to consider the claim will result in a fundamental miscarriage of justice. *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). As was noted in the Order granting the Director's motion to alter or amend the judgment, the Texas prison system will not consider the Petitioner's unexhausted claims at this time and such claims are procedurally defaulted in the absence of a showing of cause and prejudice or a

fundamental miscarriage of justice. In order to satisfy cause and prejudice, the Petitioner must show that some objective factor external to the defense prevented him from previously raising the claim and that actual prejudice resulted. *McClesky v. Zant*, 499 U.S. 467 (1991). Cause and prejudice or a fundamental miscarriage of justice may be shown by the use of affidavits and sworn statements; conclusory allegations will not suffice. *Rupert v. Johnson*, 79 F.Supp.2d 680, 695 (W.D. Tex. 1999).

In the present case, the Petitioner did not show cause for failing to bring his claims regarding the March disciplinary case in both his Step 1 and Step 2 grievances. He likewise failed to show prejudice resulted from any cause. The August disciplinary case is more problematic. The Petitioner endeavored to satisfy cause by alleging that he did not have access to writing materials and grievance forms, although he admitted he had access to "home made" forms and made "home made" I-60s. He also alleged that he was not informed about his right to appeal and the method for filing an appeal and denied access to review the audiotape recording of the hearing to prepare for an appeal. The Petitioner, however, offered nothing other than conclusory allegations and bald assertions, which are insufficient to support a petition for a writ of habeas corpus. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983); *Joseph v. Butler*, 838 F.2d 786, 788 (5th Cir. 1988). By comparison, the Director countered the Petitioner's claims with affidavits, notarized statements and the hearing tape. The Director showed that grievances forms were available. He showed that the Petitioner knew how to file grievances and how to appeal disciplinary cases due to past experiences. Moreover, counsel substitute was willing and able to provide help if asked. The hearing tape clearly refutes the Petitioner's claim that he was not told of the results of the hearing, not given a copy of the findings nor told about his right to appeal and how to appeal. The Petitioner has not shown cause. He likewise failed to show prejudice resulted from cause. The Court would note that the Petitioner claimed that he lost good time and good time earning capacity which affected his release date; however, the Director appropriately countered his statements by noting his history of disciplinary cases and that it cannot be determined whether his release date was actually affected. The Fifth Circuit has described the lack of precision in determining a release date as speculation and

insufficient for obtaining habeas corpus relief. *Malchi v. Thaler*, 211 F.3d 953 (5th Cir. 2000). The Court finds that the Petitioner has shown neither cause and prejudice nor a fundamental miscarriage of justice. He has not shown that his claims should be considered despite his procedural default. The Director correctly argued that all of the Petitioner's claims were procedurally defaulted. The Court would add that the Petitioner has not shown that his due process rights were violated even if he had not procedurally defaulted his claims. It is therefore

**ORDERED** that the above-styled petition for writ of habeas corpus is **DENIED** and the case is **DISMISSED** with prejudice. It is further

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **14** day of **November, 2005.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE